UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| FREDERICK JELOVSEK,<br>     Plaintiff,<br><br>v.<br><br>PHIL BRESDEN, PAUL SUMMERS, and<br>SHARI ELKS,<br>     Defendants,<br><br>and<br><br>WINE & SPIRITS WHOLESALERS<br>OF TENNESSEE,<br>     Intervenor.<br><br><br>S.L. THOMAS FAMILY WINERY, INC., d/b/a)<br>THOMAS FAMILY WINERY, and<br>MARTIN REDISH,<br>     Plaintiffs,<br><br>v.<br><br>PHIL BRESDEN, PAUL SUMMERS, and<br>SHARI ELKS,<br>     Defendants. | Case No. 2:05-CV-181<br><br>Chief Judge Curtis L. Collier<br><br><br><br><br><br><br><br><br><br><br><br>Case No. 2:06-CV-149<br><br>Chief Judge Curtis L. Collier |

**M E M O R A N D U M**

## I.    INTRODUCTION AND PROCEDURAL HISTORY

Before the Court are two consolidated cases[1] challenging the State of Tennessee's statutory

scheme for regulating wine licensing, distribution, and shipping.   Tenn. Code Ann. §§ 57-3-

207(f)(1), 303(e)(1), 402 & 404(a) & (c).   Tennessee is one of a decreasing number of States which

---

[1] Case No. 2:05-CV-181 is the designated "lead" case, and all citations are to its Court File
unless otherwise noted.

currently prohibit the direct shipment of wine from out-of-state wineries to in-state consumers. *See* Wine Inst., Direct Shipment Laws By State (as of Jan. 2007); Linda Greenhouse, *Court Lifts Ban on Wine Shipping*, N.Y. Times, May 17, 2005.

Plaintiffs Jelovsek and Redish are oenophiles who allege they would purchase wine directly from out-of-state wineries and have such wine shipped in-state, if the law permitted (Court File No. 1, ¶¶ 7-8). Plaintiff S.L. Thomas Family Winery, Inc., d/b/a Thomas Family Winery (collectively, "Plaintiffs") is an Indiana-based commercial winery which alleges it would ship wine directly to in-state consumers (Case No. 2:06-CV-149, Court File No. 1). Plaintiffs bring their claim under 42 U.S.C. § 1983, and allege that Tennessee's Grape and Wine Law and laws prohibiting the shipping of alcoholic beverages deprive them of their rights under the Commerce Clause of the U.S. Constitution, art. I, § 8, cl. 3 (*id.* at ¶ 1). Plaintiffs seek a declaratory judgment to such effect and an injunction against enforcement of these laws. Plaintiffs cite *Granholm v. Heald*, 544 U.S. 460 (2005), in support of this position. In *Granholm*, the United States Supreme Court overturned wine direct-shipping laws in Michigan and New York, finding such State laws impermissibly burdened interstate commerce. Plaintiffs request the Court apply *Granholm* to overturn the "licensing, residency, payment of tax, direct shipping, criminal and civil penalties, and other prohibitive and discriminatory requirements of Tennessee laws pertaining to the direct sale and shipment of wine . . ." (Court File No. 1, p. 16).

Defendants are sued in their capacities as State officials (*id.* at ¶ 18). The defendants include Tennessee's Governor, Attorney General, and the Executive Director of the Alcoholic Beverage Commission (the "Commission"), the agency charged with enforcing state liquor laws (*id.* at ¶¶ 14-18). The Court also granted the Intervenor petition (Court File No. 19) of Wine & Spirits Whole-

salers of Tennessee ("WSWT"; collectively, "Defendants") (Court File No. 30). Defendants argue that Tennessee's wine licensing, distribution and shipping laws are constitutional because such laws are equally as restrictive on in-state wineries as they are on out-of-state wineries (Court File No. 17, p. 1-2). Defendants rely on the Twenty-First Amendment, which gives States great discretion in regulating alcoholic beverages, including wine (Court File No. 31, p. 10; No. 32, p. 5).

The Court has already denied (Court File No. 16) Defendant's prior motion to dismiss for lack of standing (Court File No. 7). The Court determined (1) Plaintiffs had standing to assert their claims and (2) Plaintiffs had sufficiently alleged a claim to avoid dismissal under Fed. R. Civ. P. 12(b)(6) (Court File No. 16, p. 5). The question currently before the Court, based on Plaintiff's complaint and the parties' cross-motions, is: are the challenged statutes facially discriminatory in favor of in-state wineries and against out-of-state wineries. If so, following the analysis in *Granholm* the Court will need to ask whether Tennessee's laws are narrowly tailored to advance a legitimate local purpose.

Plaintiffs and the state officials filed cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (Case No. 2:06-CV-149, Court File Nos. 2 & 5). WSWT responded to both motions, asking the Court to deny both motions as premature (Court File No. 37, p. 2; hereinafter "WSWT Resp.").[2] WSWT would prefer to develop a full factual record; WSWT feels there is little development on the record as to the (1) impact of the challenged statutes on interstate commerce and (2) the "legitimate local purpose(s)" which underlie such statutes (*id*. at 7-9). Again, the Court must weigh the purpose behind the statutes against their impact on interstate commerce if the Court finds the statutes are facially discriminatory.

---

[2] Interestingly, neither Plaintiffs nor the state Defendants made an effort to respond to WSWT's brief.

The Court fully agrees with WWST, the record in this case is not as detailed as it could be. The parties have failed to litigate a "full, fact-intensive Commerce Clause analysis." The Court did consider whether to require Plaintiffs and the State Defendants to supplement and support their motions.[3] However, after careful review of the motions and pleadings, the Court determined that the challenged statutes, in particular the Grape and Wine Law and the prohibition on the import and transport of alcoholic beverages such as wine, is constitutionally permissible. This case is factually and legally distinguishable from *Granholm*. Therefore, the Court need not review the challenges statutes under strict scrutiny and has not required the parties to supplement the record.

By Order attached to this Memorandum, and for the reasons set forth below, this Court will **GRANT** Defendants' motion to dismiss (Court File No. 2).[4] Accordingly, the Court will **DENY** Plaintiffs' motion to dismiss (Court File No. 5), and will also **DENY** the request of WSWT to permit the case to go forward to discovery.

---

[3] The Court found the State's response to be particularly inadequate in addressing the more substantive issues as it simply (1) restated the Attorney General's Opinion No. 04-010 from 2004, (2) included little citation, and (3) failed to provide a justification for Tennessee's alcoholic beverage restrictions.

[4] The Court has not come to this decision lightly, but it appears here Plaintiffs are asking for too much over too little. As explained in this memorandum it seems Plaintiffs are trying to take a small difference in the direct, on-site access of in-state and out-of-state wineries to consumers, and have the Court magnify this difference to find unconstitutional the licensing, residency, tax, penalty, and other provisions of Tennessee's regulatory scheme for alcoholic beverages. As WSWT points out, Plaintiffs request relief disproportionate to the harm they allege (WSWT Resp. 5 n.2).

Additionally, it is the State Legislature's role to adapt its laws to the will of the Tennessee citizenry and the modern market. An indication of the State's willingness to adept to changed circumstances is Senate Bill 1977 (HB1850), which was introduced on February 15, 2007. The bill "authorizes persons licensed in this state or another state as wine manufacturers . . . to ship wine directly to [of age] Tennessee residents" pursuant to a newly created wine direct shipper license. *See* S.B. 1977, 105th Leg. 1st Sess. (Tenn. Feb. 15, 2007).

## II.    STANDARD OF REVIEW UNDER FED. R. CIV. P. 12(c)

The standard of review for a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings is the same standard of review as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987).  The Court must (1) construe the complaint in the light most favorable to Plaintiff, (2) accept as true all factual allegations in the complaint, and (3) determine if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief."  *Conley v. Gibson*; 355 U.S. 41, 45-46 (1957); *Tritent Int'l Corp. v. Kentucky*, 467 F.3d 547, 553-54 (6th Cir. 2006); *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).  The Court accepts factual allegations as true but is not required to accept legal conclusions or "unwarranted factual inferences."  *Tritent Int'l Corp.*, 467 F.3d at 544 (citations omitted); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988).


## III.    BACKGROUND ON TENNESSEE'S REGULATION OF WINE

Like many States, Tennessee has established a three-tiered system of required licenses to regulate the sale and distribution of wine and other alcoholic beverages.  With reference to wine, the tiers include: (1) wineries, (2) wholesalers, and (3) retailers.  Tenn. Code Ann. § 57-3-201.  Wine is generally included in the definition of "alcoholic beverage," *id*. § 101(a)(1)(A), and is also governed specifically by the Grape and Wine Law, which permits the manufacture and bottling of "alcoholic vinous beverages," *id*. § 207(b).  Winery licenses are restricted to Tennessee residents of two years or more or corporations owned by such residents.  *Id*. § 207(c)-(d).  Wineries are prohibited from selling directly to retailers; *all* alcoholic beverages must pass through wholesalers

before reaching retailers and consumers. *Id*. § 404(a)-(c). The Grape and Wine Law does include

one exception. Any winery whose wine is made using at least 75% Tennessee-grown agricultural

products may, on the winery's premises, serve complimentary samples and sell a limited quantity

of its own wine at retail. *Id*. § 207(f)(3).[5]

> Customers may possess and transport such wine anywhere in the state in quantities
> not in excess of that allowed by other state law, but such wine must be accompanied
> by a bill of sale. . .
>
> . . .
>
> A Tennessee licensed winery may sell no more than five (5) cases or sixty (60) liters
> of wine to any single customer in one (1) day. Any other section of the law to the
> contrary notwithstanding, it shall be legal for any such purchaser to transport within
> the state of Tennessee any amount which the customer may legally purchase from
> a Tennessee winery.

*Id*. §§ 207(f)(3) & (i).

Tennessee authorizes the Alcoholic Beverage Commission to promulgate regulations, to

enforce compliance, and to license retailers, wholesalers, manufacturers of alcoholic beverages, and

wineries. *Id*. § 207(m). Tennessee has made criminal the importation or transportation of wine and

other alcoholic beverages from any other State, territory, or country. *Id*. § 402(a). Common carriers

and "other persons" may not bring or carry wine (or other alcohol) into the State, and may not accept

delivery or transport of alcohol unless the sender or intended recipient is a licensed manufacturer

or wholesaler of alcoholic beverages. *Id*. § 402(b). Out-of-state wineries interested in marketing

their wine in-state must contract with a licensed wholesaler. "No more than one wholesaler may sell

such brand in any specified area." *Id*. § 301(e)(1). Similarly, in-state wineries must sell wine

---

[5] Wineries are limited, generally, to selling 20,000 gallons or 20% of their product on-sale at retail. If a winery uses at least 50% Tennessee-grown grapes in making its wine, such winery may sell on its premises above the 20,000 gallon cap. Tenn. Code. Ann. § 207(f)(6) (amended, added by 2006 Pub. Acts, c. 826, § 1 (eff. June 2, 2006)).

through licensed wholesalers as well, and are prevented from holding wholesalers licenses.  *Id*. §
404(c).


**IV.**    ***GRANHOLM V. HEALD***

In *Granholm v. Heald*, 544 U.S. 460 (2005), the Supreme Court addressed the issue: "Does
a State's regulatory scheme that permits in-state wineries directly to ship alcohol to consumers but
restricts the ability of out-of-state wineries to do so violate the dormant Commerce Clause in light
of § 2 of the Twenty-First Amendment?"  541 U. S. 1062 (2004).  To answer this question, the Court
employed a two-step analysis.  First, the Court evaluated whether each of the laws had a
discriminatory effect on interstate commerce.

Michigan's law prohibited the direct shipment of wine to consumers by out-of-state wineries
but explicitly allowed licensed in-state wineries to direct-ship.  *Id*. at 473-74.  The Court described
this scheme as "obvious" discrimination.  New York's law was less openly restrictive.  It permitted
in-state wineries to direct-ship to consumers; out-of-state wineries were permitted to direct-ship *if*
they established a branch office and/or warehouse in-state.  *Id*. at 474-75.  The Court saw little to
distinguish the overt from the subtle, and found "[t]he suggestion of a limited exception for direct
shipment from out-of-state wineries does nothing to eliminate the discriminatory nature of New
York's regulations."  *Id*. at 474.  In both cases, the discriminatory laws ran afoul of the "dormant"
Commerce Clause, art. I, § 8, cl. 3.  The Court reaffirmed, "State laws that discriminate against
inter-state commerce face 'a virtually *per se* rule of invalidity.'"  *Id*. at 476 (internal citation
omitted).  Moreover, the Court affirmed that § 2 of the Twenty-First Amendment,[6] which grants

---

[6] "The transportation or importation into any State, Territory, or possession of the United
States for delivery or use therein of intoxicating liquors in violation of the laws thereof, is hereby

States wide latitude in regulating alcohol, is not an unbridled power.  The Court reviewed its

"modern" § 2 jurisprudence and found three rules:

> First, the Court has held that state laws that violate other provisions of the
> Constitution are not saved by the Twenty-First Amendment. . . . Second, the Court
> has held that § 2 does not abrogate Congress' Commerce Clause powers with regard
> to liquor. . . . Finally, and most relevant to the issue at hand, the Court has held that
> state regulation of alcohol is limited by the nondiscrimination principle of the
> Commerce Clause.

*Id*. at 486-87.  Importantly, the Court stated that the three-tiered system was not necessarily at risk

from its holding in *Granholm*.  The Court stated, "[t]he Twenty-First Amendment grants the States

virtually complete control over whether to permit importation or sale of liquor and how to structure

the liquor distribution system."  *Id*. at 488-89.

After determining the Michigan and New York laws were discriminatory and were not saved

by the aegis of the Twenty-First Amendment, the Court examined the laws under strict scrutiny to

see if they advanced "a legitimate local purpose that cannot be adequately served by reasonable non-

discriminatory alternatives."  *Id*. at 489.  The States offered two main justifications: (1) preventing

underage drinking and (2) facilitating the collection of liquor tax.  *Id*. at 489-91.  The Court rejected

each of these arguments, finding there were less-discriminatory policies the States could employ to

protect such interests.  Thus the Court ruled the Michigan and New York laws were unconstitutional.

*Id*. at 492-93 (holding "[o]ur Commerce Clause cases demand more than mere speculation to support

discrimination against out-of-state goods.  The burden is on the State to show that 'the

discrimination is demonstrably justified.'").

---

prohibited."  U.S. Const. amdt. XXI, § 2.

## V. DISCUSSION

A. Tennessee's Wine Laws Are Distinguishable From Those Struck Down in *Granholm* Because the Laws Do Not Discriminate Against Out-of-State Wineries.

Here, Defendants construe *Granholm* to be a case about shipping. To such end, they argue, "nothing in the statute or rule, however, authorizes direct shipment of wine to consumers, retailers, or restaurants." (Case No. 2:06-CV-149, Court File No. 3, p. 3, hereinafter "Def.'s Mem."; *see also* WSWT Resp. 12.) Plaintiffs counter with alternative arguments. First, nothing in the law prohibits direct shipment by in-state wineries (Case No. 2:06-CV-149, Court File No. 6, p. 6, hereinafter "Pl.'s Mem."). Second, *Granholm* is not just about shipping: *Granholm* is about differential treatment, and here, in-state wineries may sell on-site at retail and out-of-state wineries may not enter the Tennessee market except through a wholesaler (*id*. at 5). The Court agrees with Plaintiffs, that *Granholm* applies more broadly than Defendants argue. At the same time, Plaintiff's interpretation is over-broad, and *Granholm* is inapplicable to these facts.

First, it appears Plaintiffs misread the Alcoholic Beverage Commission Rules, 0100-7-.04. There is no statute in Tennessee which explicitly authorizes or prohibits wineries, in-state or out-of-state, from taking orders online or by phone, fax, or mail from Tennessee consumers. *See generally* Tenn. Code Ann. Title 57. However, though no statute explicitly authorizes or prohibits the *sale*, Tennessee law explicitly prohibits the *transport* of wine into and within the State. Tennessee's strict prohibition is unlike Michigan's or New York's allowance of direct-delivery. *See* Tenn. Code Ann. § 57-3-402(b) ("No common carrier or other person shall bring or carry into this state for delivery [any alcoholic beverage]") & (c) ("It is unlawful for any person, railroad company, or other common carrier, to transport or accept delivery of alcoholic beverages . . . [except to or from those] holding a wholesaler's license."). Tennessee law prohibits importation of wine into the State except to a

licensed wholesaler; it additionally prohibits delivery originating within the State except from a licensed wholesaler. Through this requirement, both in- and out-of-state wineries are forced into the three-tiered system. Out-of-state wineries must consign their wines to a wholesaler to get them lawfully into the State, *id*. § 402(b), while in-state wineries must consign their wines to a wholesaler since only wholesalers can lawfully arrange transport or delivery, *id*. § 402(c).

The Supreme Court concluded its analysis in *Granholm* by noting, "States have broad power to regulate liquor under § 2 of the Twenty-First Amendment." 544 U.S. at 493. Despite this broad power, a State may not discriminate against interstate commerce. The Court held, if a State decided to allow the direct shipment of wine, "it must do so on evenhanded terms." The logical corollary to evenhanded permissiveness is evenhanded restrictiveness – a State may choose to ban direct shipment of wine and require all wineries to operate within the three tiers. *See id*. at 488-89 (holding § 2 of the Twenty-First Amendment gives States "virtually complete control over whether to permit importation or sale of liquor and how to structure the liquor distribution system" and "States may also assume direct control of liquor distribution through state-run outlets or funnel sales through the three-tier system"). In other words, to be constitutional, the ban must simply be nondiscriminatory. *See id*.; *Brown-Forman Distillers Corp. v. N.Y. State Liquor Auth.*, 476 U.S. 573, 579 (1986) (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)); *see also Exxon Corp. v. Gov. of Md.*, 437 U.S. 117, 126 (1978) (the fact that a state regulation burdens some interstate companies is not, without more, a Commerce Clause violation); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 471-72 (1981) (challenged statute constitutional because it "regulated evenhandedly . . . without regard to whether the [commerce came] from outside the State"). Tennessee has

evenhandedly restricted direct shipment. Tennessee's shipping restrictions (Tenn. Code. Ann. § 57-3-402) does not facially discriminate against out-of-state wineries in favor of in-state concerns.[7]

      B.      The Grape and Wine Law Does Not Impermissibly Differentiate Between In-State and Out-of-State Wineries in Violation of the Dormant Commerce Clause.

           1.      Plaintiffs Are "Ignoring Geography and Mixing Apples with Oranges."

Plaintiffs argue, because the Grape and Wine Law contains a limited exception by which in-state wineries may sell their product at retail on-site (up to a certain statutory production limit), "in-state wineries may bypass the wholesalers and sell wine directly to consumers. Out-of-state wineries may not." (Pl.'s Mem. 5.) This argument is creative and interesting, but ultimately unpersuasive. The Court has determined Tennessee's laws on the direct-shipping of wine are equally restrictive on in- and out-of-state wineries. The Court concludes there is a significant difference in kind, magnitude, and market, between permitting direct shipment of wine into or within the State and permitting wineries to sell a limited quantity of their wine on-site. Plaintiffs' counsel attempted to make a similar argument in the United States District Court for the District of Delaware, and Chief Judge Sue Robinson arrived at the same conclusion – on-site sales and direct-shipment of wine may, Constitutionally, be treated separately for purposes of a dormant Commerce Clause analysis:

---

[7] It should be noted, other courts have found States' wine regulations unconstitutional after *Granholm*. *See*, *e.g.*, *Action Wholesale Liquors v. Okla. Alcoholic Beverage Laws Enforcement Comm'n*, 463 F. Supp. 2d 1294 (W.D. Okla. Nov. 15, 2006) (in-state wineries could direct-ship and sell directly to retailers); *Huber Winery v. Wilcher*, 2006 WL 2457992 (W.D. Ky. Aug. 21, 2006) (in-state wineries could direct-ship); *Costco Wholesale Corp. v. Hoen*, 407 F. Supp. 2d 1247 (W.D. Wash. 2005) (in-state wineries could self-distribute). These cases are as distinguishable as *Granholm* and for the same reasons: they are overturning laws which granted differential treatment, whereas Tennessee's laws were not facially discriminatory. The closest case is *Cherry Hill Vineyard, LLC v. Hudgins*, 2006 WL 3791986 (W.D. Ky. Dec. 26, 2006). Here, the law permitted direct-shipping by in- and out-of-state wineries of up to two cases, so long as the purchases were made in-person. The district court rejected the in-person requirement as protectionist towards Kentucky wineries. *Cherry Hill Vineyard* is distinguishable because, as explained below, Tennessee has not made a market available which advantages in-state wineries as compared to out-of-state wineries.

[T]he crux of [plaintiff's] argument appears to be . . . "ignore[] geography and mix[] apples with oranges." Count I of plaintiffs' complaint alleges that certain Delaware laws violate the Commerce Clause by allowing in-state wineries to sell directly to Delaware residents, while out-of-state wineries wishing to do the same are required to go through one or more intermediaries. This misstates what plaintiffs are actually trying to accomplish: they wish to be able to sell and ship wine directly to Delaware residents' homes, a right that is not even afforded to in-state wineries.

Delaware wineries are permitted to sell directly to customers *on their premises* . . . Likewise, [plaintiff out-of-state winery] may sell its wine directly to Delaware residents on its Pennsylvania premises. The key fact in the case at bar is that, under the current statutory scheme, neither in-state nor out-of-state wineries are allowed to deliver wine directly to Delaware residents' homes. . . . the court finds that both types of wineries are treated the same with respect to direct wine shipments to Delaware residents. Unlike the state statutes that were invalidated by *Granholm*, "the object and effect" of Delaware's laws are not "to allow in-state wineries to sell wine directly to consumers in that State but to prohibit out-of-state wineries from doing so, or, at the least, to make direct sales impractical from an economic standpoint."

*Hurley v. Minner*, 2006 WL 2789164, *5-6 (D. Del. Sept. 26, 2006) (emphasis in original); *see also*

*Cherry Hills Vineyard, LLC v. Balducci*, 2006 WL 2121192, *8-9 (D. Me. July 27, 2006). As Judge

Robinson points out, Plaintiffs conflate two separate ideas. Plaintiffs assert that to access the

Tennessee wine market they are required to utilize a licensed wholesaler while Tennessee-based

wineries are not. This is simply untrue. To access the Tennessee wine market, in-state wineries

must also contract with a wholesaler – under the same statute challenged by Plaintiffs, Tenn. Code

Ann. § 57-3-404(a)-(c). The only time at which an in-state winery is arguably advantaged is if a

consumer, of any state, travels to the winery and purchases wine there. But it seems the market for

on-site wine purchases, requiring the effort (or pleasure) of a trip to the winery, is different in kind

and reach from the the convenience-oriented market that would be created and facilitated by a law

allowing direct-shipping. Plaintiffs are trying to compare separate markets that need not be

compared in a Commerce Clause analysis. *See Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298

(1997) ("any notion of discrimination assumes a comparison of similarly situated entities"); *Lenscrafters, Inc. v. Robinson*, 403 F.3d 798, 804 (6th Cir. 2005).

In Tennessee, an adult consumer is permitted to visit an in-state winery and make retail purchases on-site of the house wine. Tenn. Code Ann. § 207(f)(1). However, as already addressed, the winery is unable to direct-ship any wine purchased. The consumer is permitted to personally transport a statutorily limited quantity of wine within the State. *Id*. §§ 207(i) & 401.[8] Similarly a Tennessee resident who visits the Napa Valley is permitted to purchase wine at out-of-state wineries (Case No. 2:06-CV-149; Court File No. 7, p. 2 n.1), and may personally transport a limited quantity of such wine back into the State (and, under federal law, ship a limited amount if he is unable to carry it on the airplane). *See* Tenn. Code Ann. §§ 207(f)(1) & 401; H.R. 2215, 21st C. Dep't of Justice Approp. Auth. Act, Nov. 2, 2002. In short, Plaintiffs have failed to demonstrate that the Grape and Wine Law discriminates against interstate commerce by practical effect, because in- and out-of-state wineries and consumers are generally treated the same and the Law impacts a different market from the market impacted by the laws prohibiting direct-shipping. *Lenscrafters*, 403 F.3d at 804 (rejecting plaintiff's claims that optometrists and out-of-state optical companies were similarly situated because they competed for the same customers in the same market for retail eyewear).

> 2. The Grape and Wine Law Does Not "Make a Market" in the Same Manner as the Challenged Statutes in Michigan and New York.

---

[8] The Court recognizes a distinction: Tennessee wineries are authorized to sell five cases of wine to an individual in-state, while Tennessee law limits import from out-of-state to one or three gallons. Tenn. Code Ann. § 57-3-401. If anything, this distinction would have a *de minimis* impact on interstate commerce. In addition, it is unclear if Tennessee law would permit an individual to personally carry more than the one gallon limit imposed in § 401; Defendants assert "Tennessee residents may travel to other states and purchase limited quantities of wine directly from out-of-state wineries" (Case No. 2:06-CV-149, Court File No. 7, p.2) (citing Tenn. Code Ann. § 57-3-304.)

Further, Plaintiffs are comparing apples and oranges when they compare the statutes at issue in *Granholm* with the statutes at issue here. In Michigan and New York, the direct-shipping exceptions granted tangible rights and privileges to in-state wineries which were withheld from out-of-state wineries. The statutes *created or opened a direct-shipping market* for in-state wine because such wine could be shipped within the State and out-of-state, but competing wine could not be direct-shipped. Michigan and New York opened the entire area of the respective State as a market to their own wineries. *Granholm*, 544 U.S. at 474-76 (noting that the New York "scheme grants in-state wineries access to the State's consumers on preferential terms" and noting there was a "farm winery license" distinction whereby only in-state wineries could obtain such license, "the license that provides the most direct means of shipping to New York customers"). Tennessee, by prohibiting the shipping component, creates no specially advantageous State market which is then available only to State residents. *See also Cherry Hill Vineyard*, 2006 WL 2121192 at *8. As WSWT points out, "States do not have a general obligation under the dormant Commerce Clause to ensure that all potential market participants, no matter how geographically remote, have the same economic opportunities as in-state producers." (WWST Resp. 10.) As long as the State does not create the market itself and impermissibly advantage in-state businesses (thereby burdening interstate commerce), some measure of inequality based on nondiscriminatory factors is acceptable. *See Tracy*, 519 U.S. at 298; *see also Granholm*, 544 U.S. at 472 (States may not burden out-of-state business to give in-state business a competitive advantage).

> 3.  Tennessee's Wine Regulations Would Likely Pass a *Pike* Analysis.

The Court need not strictly scrutinize the challenged statutes because the statutes are non-discriminatory in purpose or even in effect. Neither the State Defendants nor Plaintiffs have briefed

the *Pike* balancing test, presumably because Plaintiffs believed the Court would apply a strict scrutiny review. It is not wholly clear why the State Defendants failed to offer a justification for Tennessee's regulation of alcoholic beverages. In typical dormant Commerce Clause jurisprudence, if a statute is found to be nondiscriminatory, "the question becomes whether 'the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.'" *Pike v. Bruce Church*, 397 U.S. 137, 142 (1970). Plaintiffs, as challengers to Tennessee's wine regulation, bear the weight of proving the "burdens placed on interstate commerce outweigh the benefits that accrue to intrastate commerce." *Lenscrafters*, 403 F.3d at 806 (citing *E. Ky. Res. v. Fiscal Ct. of Magoffin County, Ky.*, 127 F.3d 532, 545 (6th Cir. 1997). The First Circuit has held that a party can waive application of *Pike* if it bases its constitutional challenge exclusively on the theory that strict scrutiny applies. *Alliance of Auto. Mfrs. v. Gwadosky*, 430 F.3d 30, 35 (1st Cir. 2005) (citing *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (arguments not seasonably made are deemed abandoned). Although the parties have seemingly waived a *Pike* application, the Court will state for the record that Plaintiffs would likely have a difficult time satisfying *Pike* scrutiny.

Plaintiffs have identified no specific burden on interstate commerce because Plaintiffs have been trying to compare distinctive markets. Further, there are but twenty-two wineries registered in the State Department of Agriculture's directory, http://www.picktnproducts.org/food/wine.html, and it is likely Plaintiffs would discover the impact on interstate commerce of the on-site retail of wine produced by these twenty-two wineries is *de minimis*. On the opposing side Tennessee could identify as a "putative local interest" its interest in maintaining State control of wine importation and transportation, a right granted by § 2 of the Twenty-First Amendment and reinforced as legitimate by *Granholm*, 544 U.S. at 484, 488-89 ("the aim of the Twenty-First Amendment was to allow

States to maintain an effective and uniform system for controlling liquor by regulating its transportation, importation, and use").

## V. CONCLUSION

Even when construing the complaint and viewing the facts in the light most favorable to Plaintiffs, it appears beyond doubt that Plaintiffs can prove no set of facts in support of their claim which would entitle Plaintiffs to relief. Accordingly, the Court will **DENY** Plaintiffs' motion for judgment on the pleadings (Court File No. 5). The Court will **GRANT** Defendants' motion for judgment on the pleadings (Court File No. 2).

An order will enter.

**/s/**_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**